UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH CUNNINGHAM,

        Plaintiff,                Case No. 2:25-cv-10555

v.                              Honorable Susan K. DeClercq
                              United States District Judge

SHOWPAD, INC.,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 7), GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF No. 15), AND DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT**

Plaintiff Elizabeth Cunningham alleges that she worked for Defendant Showpad, Inc. ("Showpad") for two years without a negative performance review until she prepared to take a six-month maternity leave—after which she was fired. Cunningham brought this suit against Showpad for retaliation and pregnancy-based sex discrimination.

At present, there are two motions before this Court: Showpad's motion to dismiss for lack of personal jurisdiction and improper venue, and Cunningham's unopposed motion for leave to amend her complaint to add two federal claims. As explained below, Showpad's motion will be denied because the facts presented to this Court at the evidentiary hearing establish that this Court may exercise specific

jurisdiction over Showpad. And, because justice so requires, this Court will grant Cunningham's motion for leave to file an amended complaint and direct her to do so by April 8, 2026.

## I. BACKGROUND

In February 2025, Cunningham sued Showpad, alleging three counts: retaliation in violation of the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2) (Count I); pregnancy-based sex discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2201 *et seq*. (Count II); and retaliation in violation of Michigan's ELCRA (Count III). ECF No. 1. Cunningham noted that she would move to amend her complaint upon receiving a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), having filed a timely complaint with the EEOC. *Id.* at PageID.2.

On May 12, 2025, Showpad—a Chicago-based "multinational corporation providing sales and marking support services," *id.* at PageID.3—filed a motion to dismiss Cunningham's complaint under Civil Rules 12(b)(2) and 12(b)(3), alleging that this Court lacks personal jurisdiction and that venue is improper. ECF No. 7.

Specifically, as to personal jurisdiction, Showpad argued that this Court could not exercise specific personal jurisdiction over it because Showpad is not headquartered in Michigan, "does not maintain an office in Michigan, and [] its officers and directors are located in Illinois." *Id.* at PageID.21. In her response,

Cunningham said for the first time that she worked for Showpad from Michigan and alleges Showpad maintained "ongoing supervision, communication, and contacts with her" while she was working in Michigan such that Showpad purposefully availed itself of the privilege of conducting business in Michigan. ECF No. 8 at PageID.30.

In December 2025, this Court determined an evidentiary hearing was "necessary to decide factual questions regarding (1) whether Cunningham performed her work for Showpad in Michigan; (2) whether Showpad hired Cunningham with the understanding she would perform her work from Michigan; (3) whether Showpad supervised Cunningham in Michigan; and, if so, (4) how Showpad supervised Cunningham in Michigan." ECF No. 11 at PageID.41. The evidentiary hearing was scheduled to occur on February 3, 2026, *see id.* at PageID.42, but was rescheduled several times at the Parties' requests. *See* ECF Nos. 12; 13.

The evidentiary hearing finally occurred on March 11, 2026. Immediately before the evidentiary hearing, Cunningham's counsel informed this Court off the record that she had received a right-to-sue letter from the EEOC and would be filing a motion for leave to amend her complaint to add Title VII claims. *See* ECF No. 15 at PageID.51. She noted that these new claims "arise[] from the same facts and circumstances already alleged in [her] original Complaint," *id.*, and that Showpad

"does not oppose [her] motion," *id.* at PageID.52.

Once the hearing[1] began, Showpad called one witness: Kayleigh Legno, who works as a Senior People Operations Manager at Showpad. Cunningham cross-examined Legno but did not call any witnesses.

Through Legno's testimony, it was established that Showpad originally hired Cunningham to work remotely as a customer success manager in 2021. Legno testified that Cunnhingham was hired to work remotely because Showpad "didn't have a very clear location strategy for hiring at that time" because of the COVID-19 pandemic. So beginning in 2021, Cunningham worked from her home office in Birmingham, Michigan. Then, in 2022, Cunningham applied for an open "principal customer success manager" ("PCS Manager") role at Showpad. The PCS Manager job posting[2] outlined the duties and responsibilities of the role and did not list any location requirements.

Legno testified that location was not a factor in United States hiring decisions but also noted that applicants for the PCS Manager "needed to be located in a state where Showpad already had employees," and that Michigan was such a qualifying state. Ultimately, Showpad hired Cunningham to fill the PCS Manager position in

---

[1] Although this Court reviewed a transcript of the March 11, 2026 evidentiary hearing, there is no transcript on the docket so it will not be cited in this Opinion and Order.

[2] The PCS Manager job posting was admitted at the evidentiary hearing as Defendant's Exhibit 1.

2022 and "allowed her to continue" working remotely from Michigan because she had already been doing so in her previous role. Indeed, Legno testified that Showpad expected that anyone working as a PCS Manager "would work from the location that they were hired into." And Cunningham was hired in to work from Michigan.

It was also established at the evidentiary hearing from Showpad's organizational chart[3] and Legno's testimony that Cunningham's managers worked from Belgium, Missouri, and California, and her colleagues worked from Arizona, Illinois, Michigan, Texas, and Wisconsin. Because of this, Cunningham's weekly team meetings were virtual, and employees most often communicated via Slack and e-mail. As to supervision, Legno testified that Cunningham's managers would hold virtual one-on-one meetings with her.

After the evidentiary hearing, the Parties submitted post-hearing supplemental briefs in support of their respective arguments. *See* ECF Nos. 14; 16.

### II. SHOWPAD'S MOTION TO DISMISS (ECF No. 7)

Showpad seeks dismissal under Civil Rule 12(b)(2) for lack of personal jurisdiction and under Civil Rule 12(b)(3) for improper venue. ECF No. 7. Both arguments will be discussed in turn.

---

[3] The organizational chart was admitted at the evidentiary hearing as Defendant's Exhibit 2.

## A. Personal Jurisdiction

### 1. Legal Standard

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). Personal jurisdiction may be general or specific. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020). The plaintiff bears the burden of establishing that jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Here, Cunningham appears to concede that this Court does not have general personal jurisdiction over Defendants. *See* ECF No. 8 at PageID.28–30 (arguing only that Cunningham has established *specific* personal jurisdiction over Showpad). Thus, the only issue for this Court to address is whether it has specific personal jurisdiction over Defendants. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (noting that where a plaintiff "has alleged only specific jurisdiction in [her] brief," absent a showing that the defendant "has carried on systematic conduct, has consented to jurisdiction, or is incorporated under the law of [the forum state], courts may not exercise general personal jurisdiction over that defendant in [the forum state].")

Specific jurisdiction "depends on an 'affiliation between the forum and the

underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Malone*, 965 F.3d 499 at 502 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For specific jurisdiction to exist in a diversity case, two factors must be satisfied:" (1) the defendant must be covered by the state's long-arm statute, and (2) the court must determine whether the exercise of personal jurisdiction over the defendant comports with constitutional due process. *Miller*, 694 F.3d at 679.

When considering a motion to dismiss for lack of personal jurisdiction, a district court may, in its discretion, (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). When the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists to defeat a motion to dismiss. *Id.* However, if the court conducts "an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence." *Malone*, 965 F.3d at 505. Indeed, when the court conducts an evidentiary hearing on personal jurisdiction, the party asserting jurisdiction must "establish that jurisdiction exists by the preponderance of the evidence." *Young v. Orchard Enters., Inc.*, No. 2:21-cv-02337-TLP-cgc, 2022 WL

22860992, at *3 (W.D. Tenn. Nov. 28, 2022) (citing *Serras*, 875 F.2d at 1214).

## 2. Discussion

Considering the facts established at the evidentiary hearing, it appears Showpad's "motion is [not] properly supported with evidence," as the testimony at the evidentiary hearing established by a preponderance of the evidence that this Court has specific personal jurisdiction over Showpad. *Malone*, 965 F.3d at 505. Indeed, as explained below, the facts show that this Court's exercise of specific personal jurisdiction over Showpad comports with Michigan's long-arm statute and constitutional due process. *See Miller*, 694 F.3d at 679.

### a. Michigan's Long-Arm Statute

Among other circumstances, Michigan's long-arm statute expressly authorizes specific personal jurisdiction over a defendant who "transact[s] any business within the state." MICH. COMP. LAWS § 600.705(1). And "[t]he word 'any' means just what it says. It includes 'each' and 'every.'" *Sifers v. Horen*, 188 N.W.2d 623, 624 n. 2 (Mich. 1971) (citing *Harrington v. Inter-State Bus. Men's Accident Ass'n*, 178 N.W. 19 (Mich. 1920), and *Gibson v. Agric. Life Ins. Co. of Am.*, 276 N.W. 450 (Mich. 1937)). Therefore, "even the slightest act of business in Michigan" is enough for jurisdiction under the long-arm statute, so long as the plaintiff's action arises from the defendant's business transaction in Michigan. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 667–68 (6th Cir. 2023) (quoting *Lanier v. Am. Bd. of*

*Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)).

Here, it appears from a preponderance of the evidence that Showpad conducted business in Michigan by directing and supervising Cunningham's work for Showpad while she was in Michigan. This qualifies as "[t]he transaction of any business" within Michigan. MICH. COMP. LAWS § 600.705(1). Indeed, the Michigan Court of Appeals has noted that to "transact" means "to carry on or conduct" and "business" means (among other things) "an occupation, profession, or trade." *See Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (Mich. Ct. App. 2001) (quoting RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY (1997)). And here, it is clear that by supervising Cunningham's work in Michigan, Showpad was carrying on a profession or trade in Michigan. *See id.* Thus, it appears by a preponderance of the evidence that the exercise of personal jurisdiction over Showpad in Michigan comports with Michigan's long-arm statute. *See Gronski v. InContact, Inc.*, 774 F. Supp. 3d 873, 882 (E.D. Mich. 2025) (concluding that exercising specific jurisdiction over an out-of-state defendant who supervised the plaintiff's work in Michigan comported with Michigan's long-arm statute).

### b. Constitutional Due Process

Turning to the second specific-jurisdiction factor, "[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592

U.S. 351, 358 (2021). Courts apply "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). "First, the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 592 U.S. at 352 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 272 (2017) (Sotomayor, J., dissenting); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550).

### i. Purposeful Availment

Purposeful availment is "arguably the most important" prong of the due process test for specific personal jurisdiction. *Air Prods.*, 503 F.3d at 550. A defendant purposefully avails itself of a forum "by engaging in activity that should provide fair warning that [it] may have to defend a lawsuit there[.]" *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003). But defendants do *not* purposefully avail themselves of the forum through "'random,' 'fortuitous' or 'attenuated' contacts[,]

- 10 -

or [ ] the 'unilateral activity of another party or third person." *Air Prods.*, 503 F.3d at 551 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985)).

The facts presented at the evidentiary hearing establish by a preponderance of the evidence that Showpad's actions should have given Showpad a fair warning that it may have to defend a lawsuit in Michigan. Indeed, Legno testified that Showpad hired Cunningham with the expectation that she would work from her home office in Michigan. And she testified that Cunningham's managers supervised her work in Michigan through virtual one-on-one meetings. It does not appear from any of the evidence presented at the hearing that Showpad's supervision of Cunningham in Michigan was random, fortuitous, or attenuated. *See id.*

Although this Court recognizes that that the COVID-19 pandemic caused many people to start working from home unexpectedly, here, Showpad hired Cunningham in May 2021—more than a year after the COVID-19 pandemic began—to work from Michigan. And not only did Showpad initially hire Cunningham to work from her home office in Michigan, but it also promoted Cunningham to a PCS Manager in 2022 with the expectation that she would *continue* working from Michigan. These circumstances certainly suggest an "'ongoing'—as opposed to isolated or 'one-shot'—remote work relationship[] with an in-state plaintiff" such that Showpad purposefully availed itself of the privilege of conducting business in Michigan by hiring employees to work from Michigan and

supervising those employee's work in Michigan. *Gronski*, 774 F. Supp. 3d at 884; *see also Warfield v. W.N. Morehouse Truck Line, Inc.*, No. 2:25-cv-00037-DCLC-CRW, 2025 WL 3102069, at *4 (E.D. Tenn. Nov. 6, 2025) (noting that district courts have exercised personal jurisdiction over out-of-state employers in discrimination suits brought by remote employees working in the forum state where the alleged discrimination occurs "while the employee was working in the forum state, or because the employer intentionally hired the employee to conduct business in that state.").

Accordingly, this Court finds that the first due process personal jurisdiction requirement is satisfied. *See Air Prods.*, 503 F.3d at 550.

### ii. Arising From or Relating To

The second due process personal jurisdiction requirement is that the plaintiff's claim must "arise out of or relate to the defendant's contacts with the forum" state. *Ford*, 592 U.S. at 352 (internal quotation marks and citation omitted). That is because the Constitution requires "an affiliation between the forum and the underlying controversy." *Id.* (internal quotation marks and citation omitted); *see also MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) ("This requires that [the defendant]'s contacts be 'related to the operative facts of the controversy.'") (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). "[T]his is a 'lenient standard,' requiring only that the cause of action have a 'substantial

connection' to the defendant's activity in the state." *MAG IAS*, 854 F.3d at 903 (quoting *Bird*, 289 F.3d at 875).

Here, this factor is easily satisfied. Indeed, Cunningham's claims are alleged to be a direct result of her working for Showpad from Michigan and from Showpad's direction and supervision of her work in Michigan. *See Gronski*, 774 F. Supp. 3d at 886 (finding this element satisfied where out-of-state defendant remotely supervised plaintiff's work in Michigan.).

### iii. Reasonableness

Finally, the Due Process Clause requires courts to consider whether the exercise of personal jurisdiction over a defendant is reasonable—that is, whether it "comport[s] with traditional notions of fair play and substantial justice." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267–68 (6th Cir. 1996) (internal quotations omitted) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1117 (6th Cir. 1994)). Courts "must consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Id.* at 1268 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988)).

Here, the facts presented at the evidentiary hearing show that this Court's exercise of personal jurisdiction over Showpad is reasonable. Indeed, "where, as

here, the first two" due process requirements are met, "'an inference of reasonableness arises' and 'only the unusual case will'" result in a finding of unreasonableness. *Air Prods.*, 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461); *see also Sullivan*, 79 F.4th at 674 (noting that when courts find there is purposeful availment and relatedness, an inference arises that the exercise personal jurisdiction is reasonable). And Showpad has not "put forward" any "considerations . . . to overcome or contradict th[is] inference." *Air Prods.*, 503 F.3d at 555.

Moreover, "Michigan has a strong interest in protecting 'Michigan-based employees,'" *Gronski*, 774 F. Supp. 3d at 886 (quoting *MAG IAS*, 854 F.3d at 904). And here, Cunningham is a Michigan resident whom Showpad hired to work in Michigan, who "has an equally strong interest in obtaining in-state relief." *Id.* (citing *Cohn*, 839 F.2d 1170)). Although it may be burdensome for Showpad to defend a suit in Michigan, it knew—or reasonably should have known—that by hiring an employee to work in Michigan and supervising that employee through regular remote supervision, it was making a connection with Michigan. *See id.* (finding that a company knew or should have known that its remote supervision of the plaintiff worker in Michigan connected the company to Michigan). And it is notable that "the very remote communication capabilities [Showpad] used to contact [Cunningham] in Michigan during h[er] tenure at [Showpad] lessen [Showpad's] burden in defending a lawsuit here." *Id.* Thus, the exercise of personal jurisdiction over

- 14 -

Showpad under the facts of this case is reasonable. *See id.*

In sum, the facts presented at the evidentiary hearing establish that Showpad hired Cunningham to work in Michigan, that Cunningham performed her work for Showpad from her home office in Michigan, and that Showpad remotely supervised her in Michigan through regular virtual meetings. Thus, the facts demonstrate that this Court has limited personal jurisdiction over Showpad, and that exercising such personal jurisdiction comports with the Michigan long-arm statute and the federal due process doctrine. Accordingly, to the extent that Showpad's motion, ECF No. 7, seeks dismissal for lack of personal jurisdiction, it will be denied.

## B. Venue

As a final matter, Showpad also sought dismissal under Civil Rule 12(b)(3) alleging improper venue. ECF No. 7 at PageID.21–22. But having found that Showpad hired Cunningham to perform her work in the Eastern District of Michigan and that Showpad is subject to personal jurisdiction in this Court, Showpad is deemed to reside within the Eastern District of Michigan for venue purposes. 28 U.S.C. § 1391(c)(2). Thus, venue is proper, *see* 28 U.S.C. § 1391(b), and Showpad's motion will be denied in full.

### III. CUNNINGHAM'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF No. 15)

Having determined that this Court may exercise personal jurisdiction over Showpad, this Court will briefly address Cunningham's motion for leave to file an amended complaint. ECF No. 15.

Courts "should freely give leave to [amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "Justice does not require leave to amend in the presence of undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of amendment." *Klein ex rel. Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 918 (E.D. Mich. 2022) citation modified).

This Court finds that justice requires granting Cunningham's request for leave to amend her complaint. Cunningham sought leave to amend only a few weeks after receiving her right-to-sue letter from the EEOC, thus she did not delay. Moreover—and most importantly—Showpad does not object to Cuningham's motion, *see* ECF No. 15 at PageID.52, and has been on notice since Cunningham first filed her complaint in February 2025, which stated that she would "move to amend her complaint in this matter to add" federal claims once she received a right-to-sue letter. ECF No. 1 at PageID.2. In this way, there is no prejudice to Showpad. And it does not appear that either of the newly added claims in her amended complaint, ECF No. 15-1, would be futile, especially considering Showpad does not object on this basis.

Accordingly, this Court will grant Cunningham's motion for leave to file an amended complaint, ECF No. 15, and direct her to file her amended complaint on the docket on or before April 8, 2026.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 7, is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint, ECF No. 15, is **GRANTED**. To that end, Plaintiff is **DIRECTED** to file her Proposed First Amended Complaint, ECF No. 15-1, on the docket **on or before April 8, 2026**.

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 31, 2026

- 17 -